William E. WRIGHT, Petitioner-Appellee,

v.

Harold J. SMITH, Superintendent, etc.,
Respondent-Appellant.

No. 414, Docket 77–2077.

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1977.

Decided Jan. 16, 1978.

Robert S. Hammer, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellant.

Robert I. Gannon, Buffalo, N. Y., for petitioner-appellee.

Before FEINBERG, MANSFIELD and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

▮ The sole issue upon this appeal is whether the Western District of New York, John T. Curtin, *Chief Judge*, properly granted habeas relief to appellee, a state prisoner, on the ground that the trial judge's jury instructions with respect to appellee's alibi defense [1] unconstitutionally shifted the burden of proof to him on this issue and thus denied him due process. We hold that the charge did not violate appellee's constitutional rights and accordingly reverse.

On August 3, 1972, following a jury trial in Erie County Court, appellee William E. Wright was convicted of robbery in the first and second degrees in violation of New York Penal Law §§ 160.15 and 160.10. He was sentenced to concurrent, indeterminate terms of 0–15 years on the first degree robbery count, and 0–7 years on the second degree robbery count.[2] After exhausting state court remedies with respect to the issue raised here and other issues not relevant to this appeal, Wright, on October 2, 1974, filed a petition for a writ of habeas corpus in the Western District of New York.

At petitioner's state court trial, Ruth Kowles, an employee of the Erie County Department of Social Services, testified that her purse was forcibly taken from her by two black men on the afternoon of November 11, 1971, while she was walking to work. Mrs. Kowles identified petitioner Wright as one of the men who had robbed her, and she further testified that Wright threatened her with a knife during the robbery.[3] A co-worker of Mrs. Kowles', Joseph Blantern, testified that he witnessed the

---

1. Under New York law, when a statutorily defined "affirmative defense," such as duress or entrapment, is raised at trial, the defendant has the burden of proving the defense by a preponderance of the evidence. N.Y.Penal Law, § 25.00(2). Alibi, however, is *not* classified under New York law as an affirmative defense but as "a 'defense' other than an 'affirmative defense.'" The statute provides that "the people have the burden of disproving such defense beyond a reasonable doubt." *Id.*

Aside from these provisions of New York law, petitioner's presence at the robbery was a fact "necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). As such, it was a fact as to which the state bore the burden of proof beyond a reasonable doubt. Since this appeal involves solely the claim that the state court's charge impliedly shifted to petitioner the burden of proof on an essential fact, rather than a challenge to a state statute that imposes such a burden, we are spared the task of deciding the constitutionality of a statute that places evidentiary or persuasion burdens on a defendant. See, e. g., *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). For a useful discussion of these issues see Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases*, 86 Yale L.J. 1299 (1977).

2. Wright was first sentenced to indeterminate terms of up to 25 years on the first degree robbery charge and up to 15 years on the second degree robbery charge. Upon appeal these sentences were reversed by the Appellate Division, Fourth Department, following which he was resentenced in September, 1973.

3. The state produced only two witnesses at trial, Mrs. Kowles and her co-worker Joseph Blantern. A motion to suppress Mrs. Kowles' identification testimony was made prior to trial on the ground that a display of photographs from which she picked Wright's picture, and a lineup at which she identified petitioner, were so suggestive as to create a substantial likelihood of misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The motion to suppress was denied by the state court. Petitioner challenged the photographic display and the lineup on appeal from his conviction and again in his habeas petition. Neither the Appellate Division nor Judge Curtin found these identification procedures so suggestive as to render Mrs. Kowles' identification testimony unreliable. The legality of these procedures is not before us.

robbery from a distance of approximately 30 feet but could not identify either of the assailants.

The defense presented two alibi witnesses at trial, petitioner's wife and sister, who both testified that petitioner was at home with them when the robbery occurred and that, because of an ankle injury sustained a few days before the robbery, he was barely able to walk on the day of the crime. The Wrights lived in an apartment not far from the scene of the robbery and across the street from the Social Services office where Mrs. Kowles worked.

The pertinent excerpts of the trial court's charge to the jury specifically referring to the alibi defense are set out in the margin.[4] At the conclusion of these instructions, the court inquired of counsel whether there were any "exceptions or requests." Defense counsel replied that he had no exceptions, but that he did have "some requests." After a colloquy with counsel at the bench,[5] the following clarifying instruction was given.

4. The court charged the jury with respect to the alibi as follows:

"Now, the defendant in this case, in addition to pleading not guilty, has interposed a defense that is commonly known as an alibi. An alibi is a latin [sic] word meaning elsewhere, and when applied to a trial, or in this trial of a case, a trial such as this, it means that at the time of the alleged crime, said to be committed by defendant, that the defendant claims that he was someplace other than the scene of the crime. In this case, through two alibi witnesses, he maintains that he was in an apartment, not far from the scene, if I recall correctly. She said, Ruth Kowles said she came out of 312 Perry Street, and that just outside, some thirty, or forty, or fifty feet from where she exited from 312 Perry Street, that she was robbed. Now, the defendant says, through the two alibi witnesses, that he was in fact not out of the house; that he lives at 344 Perry Street, a short distance from the scene, here, but that his physical condition was such that he couldn't run, and that he was in fact not out of the house. It's claimed by one of the alibi witnesses, that he was reading a—reading to his wife from 4:30 to 5:00, and by the other alibi witness, I believe that he was reading from 4:30 to 5:30, and that he didn't, during this time, leave the house, and in fact, didn't leave the house at all between quarter after four and a quarter to eleven. Now, an alibi defense, if clearly—clearly established by unsuspected, believable testimony, is the very best that an innocent man can make. No man can be in more than one place at one time. And, if therefore, the defendant was not at the scene of the alleged crime at the time when it is said to have been committed, he cannot be guilty of the commission of any of the crimes in this indictment. Now, you ascertain whether this alibi defense was interposed in good faith. This is your job here, or whether it was a defense that was concocted and resorted to, in an attempt to clear a guilty man of the charge. You should examine not only the principal facts which the alibi witnesses testified to, but carefully examine all of the differences, discrepancies, or contradictions, if there be any in the testimony of these alibi witnesses. You may consider the distances involved from the scene of the events, or, were these witnesses accurate, were they evasive; is there any common or mutual interest among the alibi witnesses, which interest might affect them to the extent of creating or helping to create a false alibi, or is their testimony prompted solely by a desire to assist in the true administration of justice. If, after careful analyzing on behalf of the defendant, the evidence which has been presented here, you find it is false or has been interposed here intentionally as false defense, such a finding of fact, may be considered by you as a circumstance bearing on the guilt or innocence of the defendant. The jurors have a right, if they find as a fact, that a false defense has been intentionally interposed, to ask, what was the motive underlying the interposition of the false defense, was it, or was it not to escape the force of convincing circumstances, pointing to guilt. If you find that any such attempt has been made, you may consider that fact in determining the guilt or the innocence of this defendant. But, if on the other hand, you find that this was, that he was truly in that apartment, that he wasn't out on the street, that he, of course, if you find that he was in the apartment, and never left that apartment that apartment [sic] that afternoon, around 4:45, then you must find him not guilty."

5. This discussion between counsel and the court, as well as two others regarding the jury instructions, were not recorded by the court reporter. Appellate review of a criminal trial is not assisted by a transcript that simply states "whereupon an off-the-record discussion was held at the bench between the Court and Counsel." (Tr. 302, 303). Although discussions between court and counsel with respect to exceptions or requests following a jury charge obviously cannot be held within the jury's hearing, a record of them is important for any meaningful review.

"Counsel has made a request here that I tell you, if you have a—if the alibi witnesses have created reasonable doubt in your mind as to whether or not the defendant committed the crime charged here, you have a duty to acquit. Of course, that is true; if you have a doubt, if you have a doubt as to the guilt of the defendant, you are bound to resolve the doubt in favor of the defendant. I am sure I told you that."

No further request with respect to the subject was made by counsel.

In a thorough opinion, Judge Curtin criticized the charge for not including an unequivocal statement that the government's burden was "to convince the jury beyond a reasonable doubt that the alibi offered by petitioner was not true." Although the charge advised the jury of the state's burden of proving the defendant's guilt beyond a reasonable doubt, Judge Curtin did not consider that language adequate to dispel the suggestion he detected in the portion of the charge expressly dealing with the alibi defense to the effect that petitioner, having asserted an alibi, thereby shouldered the burden of persuading the jury of its truthfulness. From this decision and judgment the state appeals.

## DISCUSSION

The introduction of an alibi defense frequently poses the risk that if the alibi evidence is disbelieved, the defense will backfire, leading the jury to convict because of the failure of the defense rather than because the evidence introduced by the government has satisfied the jury of the defendant's guilt beyond a reasonable doubt. Because of this possibility of confusion on the jury's part, we have, on appeal

from federal convictions, held that it is reversible error to refuse a defendant's request to the effect that, even if the alibi witnesses are disbelieved, the burden of proof remains with the government. *United States v. Burse,* 531 F.2d 1151 (2d Cir. 1976).

> "[F]ailure to establish an alibi does not properly constitute evidence of guilt since it is the burden of the government to prove the complicity of the defendant, not the burden of the defendant to establish his innocence. That, however, is a point with which we cannot expect jurors to be familiar." 531 F.2d at 1153.

Other circuits have likewise reversed federal convictions on the ground that the alibi instruction given by the district court inadequately explained the government's burden of proof. See, e.g., *United States v. Booz,* 451 F.2d 719 (3d Cir. 1971). The safeguard against jury confusion is a careful jury instruction designed to emphasize the fact that the assertion of an alibi does not affect the government's burden of proving guilt beyond a reasonable doubt.[6]

Regardless of federal or state practice with respect to instructions on the subject of an alibi defense, see *People v. Johnson,* 37 A.D.2d 733, 323 N.Y.S.2d 880 (2d Dept. 1971), the issue upon this review of a decision on a federal habeas petition is not whether the state court's "instruction is undesirable, erroneous, or even 'universally condemned,'" *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1970), but whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. See also *United States ex rel. Stanbridge v. Zelker,* 514 F.2d

---

**6.** See, e.g., the proposed instruction on alibi in 1 Devitt & Blackmar, Federal Jury Practice and Instructions, § 1308 (3d ed. 1977):

"Evidence has been introduced tending to establish an alibi, which amounts to a contention that the defendant was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.

"If, after consideration of all the evidence in the case, you have a reasonable doubt as

to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.

"The jury will bear in mind the government's burden of establishing the involvement of the defendant, and all other essential element of the offense as defined in these instructions, by proof beyond a reasonable doubt."

45, 50 (2d Cir. 1975) (state court jury charge is a matter of state law, and alleged errors are not reviewable on federal habeas corpus absent showing that defendant was deprived of a federal constitutional right).

Petitioner's burden in meeting the *Cupp v. Naughten* standard is particularly heavy for the reason that unlike the situation in *Burse, Booz* and *Johnson, supra,* defense counsel neither submitted a proposed alibi charge to the trial court nor objected to the instruction that was given. The Supreme Court recently stated:

> "Orderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). (Footnotes omitted).

Defense counsel at trial merely requested that an alibi charge be given without submitting any suggested text. When asked whether he took exception to the charge that was given, defense counsel unambiguously responded in the negative. Counsel then sought and obtained a clarifying instruction, which essentially tracks the heart of the proposed alibi instruction in the standard federal practice book. See 1 Devitt & Blackmar, Federal Jury Practice and Instructions, *supra,* n.6.

In support of his habeas petition appellee has cited two portions of the state court's alibi charge that he contends impliedly shifted the burden of proof from the state to him. First, he points to the trial judge's statement, "[a]n alibi defense, if clearly . . . established by unsuspected, be-

lievable testimony, is the very best that an innocent man can make," which the New York Appellate Division has held to be reversible error. *People v. Johnson,* 37 A.D.2d 733, 323 N.Y.S.2d 880 (2d Dept. 1971). The state court's rationale is that the phrase "clearly established" suggests that a defendant must prove his alibi, and that the reference to "unsuspected, believable evidence" implies that the alibi must be of a certain persuasive quality to be credible.[7]

The second alleged defect in the charge involves the following passage:

> "If, on the other hand, you find that this was, that he was truly in that apartment, that he wasn't out on the street, that he, of course, if you find that he was in that apartment, and never left that apartment that apartment [sic], that afternoon, around 4:45, then you must find him not guilty."

Petitioner characterizes this portion of the charge as instructing the jury to acquit only if it was persuaded that the alibi was true, and as failing to indicate that the jury could still acquit if it disbelieved the alibi witnesses.

Standing alone, the excerpted portions of the state trial judge's instructions could, as appellee urges and the district court concluded, be construed as shifting to the defendant the burden of proving his alibi defense. Such an implication could obviously have been avoided entirely by adding a specific admonition immediately after each of the quoted passages to the effect that, regardless whether the jury accepted the alibi evidence as credible, the burden remained on the state to establish beyond a reasonable doubt each and every element of the crime and that the jury must acquit if it had a reasonable doubt as to the defendant's guilt after considering the state's evidence and the alibi.

**7.** Despite the Appellate Division's holdings in *People v. Johnson, supra,* and in other similar cases, it rejected petitioner's argument on direct appeal that the alibi charge given in this case was erroneous under state law. While this holding would appear to be inconsistent with Appellate Division precedent, the state law status of the alibi charge in this case is not decisive for our purposes. Even assuming, arguendo, that the use of the phrase "clearly established by unsuspected, believable evidence" is reversible error under New York law, petitioner is not entitled to federal habeas relief unless it can be said that the phrase, together with the rest of the charge, deprived petitioner of due process.

However, defense counsel voiced no exception to these flaws in the charge, which would have alerted the trial judge to the advisability of reemphasizing the state's burden. Counsel limited himself to requesting and obtaining a supplemental clarifying instruction that, if the jury had a reasonable doubt as to the defendant's guilt it had a "duty to acquit" and "to resolve the doubt in favor of the defendant." This apparently satisfied defense counsel and corrected any confusion that might have been created by the court's excerpted prior comments.

The defendant's failure to press for more is readily understandable. The issue was relatively clearcut and simple: whether the state proved beyond a reasonable doubt that the defendant had on November 11, 1971, forcibly taken Ms. Kowles' purse from her while she was out on the street walking to work. Although the trial judge did not refer to the state's burden at the particular points now objected to by appellee, his charge does contain numerous and pervasive references to the state's burden, which are excerpted in the margin.[8] Viewing the

8. The state trial judge gave the following instructions to the jury on the subject of the state's burden:
"This defendant, as all defendants, is given certain safeguards, safeguards which must be respected by you as jurors, and by me as Judge. One of these safeguards is the presumption of innocence. This defendant is presumed to be innocent until the People have proved him guilty beyond a reasonable doubt. The presumption of innocence is like a cloak of protection placed by the law, about the shoulders of the defendant. It's been there at every stage of these proceedings, and it's there now, and it shall remain there until such time as you, the triers of the facts, after due deliberation in the jury room, are convinced, if you are convinced, that the People have proved his guilt beyond a reasonable doubt. And, the People, having accused this defendant of the crime charged, have the burden of proving his guilt beyond a reasonable doubt. This defendant is under no obligation to disprove his guilt, or to prove his innocence. The presumption of innocence is with him. The burden of proving his guilt, rests with the People throughout the trial, and it extends to every element of the crimes charged in the indictment, and it never shifts to the defendant. If, after deliberating, you find that the People, through the District Attorney, have sustained the burden of proof, that they have proved the guilt of the defendant, beyond a reasonable doubt, then you will find the defendant guilty. On the other hand, if you find that the People have not borne the burden of proof, if they have not destroyed the presumption of innocence by proof which convinces you of the guilt of the defendant beyond a reasonable doubt, you will, of course, find the defendant not guilty." (Tr. 269–71). "Reasonable doubt is an important concept in our law, because as I have explained, the law places the burden upon the People to prove this defendant guilty beyond a reasonable doubt." (Tr. 279).

"The law gives, and you must give the defendant the benefit of every reasonable doubt, as I have defined it, as I have defined it to you, but not all doubt." (Tr. 282). "Putting all of these things together, if you find that this defendant on November 11th, 1971, in the City of Buffalo, forcibly stole a purse and its contents, from Ruth Kowles, as I have defined forcibly stealing to you, and if *you further find that in the course of such* stealing, he used, or threatened the immediate use of a knife, and if you further find that the knife was a dangerous instrument, that is, one readily capable of causing death or serious physical injury, an injury creating a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ, you must convict this defendant of robbery in the first degree, which is charged in the first count, *and you must be convinced of all of these things beyond a reasonable doubt.* If you are convinced, beyond a reasonable doubt, that this defendant forcibly stole Ruth Kowles' purse, and its contents, but you are not so convinced that in the course of the robbery he used or threatened the immediate use of a dangerous instrument, you cannot convict *him of robbery in the first degree as charged,* but you must convict him of robbery in the third degree under Section 160.05 of the Penal Law. This Section provides that a person is guilty of robbery in the third degree, when he forcibly steals property, and of course, if you are not convinced beyond a reasonable doubt, that this defendant forcibly stole any property from Ruth Kowles, you must find him not guilty under this first count." (Emphasis added). (Tr. 295–96).
"Bearing in mind the definitions of robbery that I have already given you, if you find beyond a reasonable doubt that on November 11th, 1971, in the City of Buffalo, this defendant forcibly stole a purse and its contents from Ruth Kowles, and if you further find

charge as a whole in the light of the trial record, as we should, *Boyd v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926), we are satisfied that, regardless whether certain portions might, standing alone, constitute error as a matter of state law, the flaws fell far short of plain error and did not reach a constitutional level warranting issuance of a writ of habeas corpus.

beyond a reasonable doubt that he was aided by another person who was actually there during the commission of the robbery, and assisted this defendant in its commission, you must find this defendant guilty of robbery in the second degree, under this second count of the indictment. If you are not convinced beyond a reasonable doubt of all the elements of robbery in the second degree, as I have just given them to you, that is, forcibly stealing plus the assistance of another person actually present, you must find this defendant not guilty under this second count of the indictment." (Tr. 298–99).