Will E. ROGERS, Petitioner,

v.

Walter REDMAN, and Attorney General of the State of Delaware, Respondents.

Civ. A. No. 78–69.

United States District Court, D. Delaware.

Sept. 28, 1978.

Julianne E. Hammond of Roeberg & Agostini, P.A., Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondents.

OPINION

STAPLETON, District Judge:

Petitioner has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief from a judgment of conviction for robbery, attempted rape and assault. He was convicted in the Superior Court of New Castle County. On appeal, the Delaware Supreme Court affirmed the conviction. *Rogers v. State,* 343 A.2d 608 (Del.Sup.Ct.1975). Petitioner bases his claim for relief on erroneous instructions by the trial court to the jury regarding his alibi defense. Petitioner argues that the

trial court's charge respecting the alibi evidence which he offered at trial shifted the burden of proof to him, and thus constituted a denial of due process of law under the Fourteenth Amendment. As a threshold matter, I note that petitioner has exhausted his available state judicial remedies, a prerequisite for this Court to entertain his petition for a writ of habeas corpus. 28 U.S.C. § 2254(b). *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## I.  THE EVIDENCE.

At about 11:30 A.M. on January 9, 1974, Hilda CiMarcone was violently assaulted by a man she described as being black, tall and wearing checked trousers. She testified that she never saw her assailant's face.

As the assailant was leaving the scene of the crime, he was seen by three witnesses. Two of them, Fred and Mark Gamiel, positively identified the petitioner as the assailant. Mark Gamiel testified that the assailant was between 6'2" and 6'4", weighed between 240 and 260 pounds, and wore a ski cap and checked pants. Fred Gamiel testified that the assailant was 6'2" and wore a ski cap. Both of these witnesses testified that they had clear opportunities to view the assailant. Each also independently selected petitioner's photo from a large array shortly after the crime.

At trial, petitioner presented an alibi defense, purporting to place himself at his sister-in-law's home at the time of the assault. The petitioner testified that he was at his sister-in-law's until after noon on January 9, and that he owned neither a ski cap nor checked pants. Although the petitioner's sister-in-law testified that she did not see him from 11:15 A.M. until 1:30 P.M. on January 9, she testified that he did not own checked pants. The petitioner's sister testified that the petitioner was in and out of his sister-in-law's house from 11:15 A.M. until noon, but was not absent for any length of time. She testified that she never saw her brother wear either a ski cap or checked pants. Finally, the petitioner's sis-

ter-in-law's son testified that he never saw the petitioner wear any checked pants.

In its rebuttal evidence, the State introduced the testimony of Detective Edward Head, who had arrested petitioner on January 17, 1974. Head testified that on that date petitioner was wearing a pair of checked trousers.

## II.  THE JURY CHARGE.

█ In his instructions to the jury, the trial judge first gave the elements of the robbery charge. He concluded by stating:

> Now, if after considering all the evidence you find that the State has established beyond a reasonable doubt that the Defendant, Will E. Rogers, acted in such a manner as to satisfy all the elements that I stated for you, on January 9, 1974, then you should find him guilty of robbery in the first degree.
>
> If you have a reasonable doubt, or if you do not believe he committed the offense of robbery in the first degree, your verdict should be not guilty as to Count one.

With regard to the attempted rape charge, after reciting the essential elements, the trial judge charged:

> After considering all of the evidence in the case, you are satisfied beyond a reasonable doubt that Will E. Rogers acted in such a manner as to satisfy the elements of the attempt to commit the crime of rape, then you should find him guilty. If you have a reasonable doubt or if you do not believe he committed the offense of attempted rape, you should find him not guilty.

After reciting the essential elements of the assault count, the trial judge instructed:

> If after carefully considering all the evidence in the case you are convinced beyond a reasonable doubt of those elements, then you should find the Defendant guilty.

If you have a reasonable doubt, or if you do not believe that he committed the offense of assault in the first degree, your verdict should be not guilty.

At the end of his jury charge, the judge gave the following instructions to the jury regarding the alibi defense.

Now, the defendant contends that he was not present at the time and at the place where he is alleged to have committed the offenses charged in the indictment. This is known as affirmative defense of alibi. If after a careful consideration of all the evidence in the case you have a reasonable doubt as to whether the Defendant was present at the time and place alleged you should acquit him, find him not guilty.

Now, it is the defendant's burden to prove to your satisfaction the defense of alibi and the law reads that affirmative defense of alibi is established by a preponderance of the evidence when the jury is persuaded that the evidence makes it more likely than not that each element of the affirmative defense existed at the required time. Therefore, if you are convinced by a preponderance of the evidence that the Defendant, Will E. Rogers, was not present at the scene of the offense at the time they allegedly were committed, then you must return a verdict of not guilty.

The defense attorney took exception to this portion of the jury instructions.[1]

Petitioner claims that by instructing the jury that the alibi defense was an affirmative defense and that the petitioner had the burden of proving his alibi by a preponderance of the evidence, the trial judge committed constitutional error which was not harmless beyond a reasonable doubt.[2]

## III. THE STANDARD OF REVIEW.

█ This Court's authority to review jury instructions in a habeas corpus proceeding arising out of a State court criminal trial is limited. *See Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1976); *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States ex rel. Harding v. Marks,* 541 F.2d 402, 405 (3d Cir. 1976). As the Supreme Court has recently noted, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe, supra* 431 U.S. at 154, 97 S.Ct. at 1736. Emphasizing the judiciary's strong interest in preserving the finality of judgments, the Court continued to state that the test " in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten,* 414 U.S. at 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned",' *id.,* at 146, 94 S.Ct. 396." *Henderson v. Kibbe, supra,* 431 U.S. at 154, 97 S.Ct. at 1737. Significantly, the Court also noted that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 97 S.Ct. at 1737.

1. Following the judge's charge to the jury, the defense attorney objected to the specific instruction now in question. The trial judge noted the objection. I conclude that the objection was sufficiently timely to meet the requirement of *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1976), that the trial judge be able to correct his error and deliver an accurate charge. Cf. *Wright v. Smith,* 569 F.2d 1188 (2d Cir. 1978).

2. In its Opinion, the Delaware Supreme Court held that the trial court had erred in this instruction, under *Halko v. State,* 175 A.2d 42 (1961). In *Halko,* the court ruled that an instruction which places the burden upon the accused to prove an alibi defense to the jury's satisfaction improperly shifts the burden of proof that rests with the state. The *Rogers* court held that this error was harmless, however, reasoning that "[t]he vagueness and generality of defendant's alibi witnesses leaves defendant actually unaccounted for during the crucial time and does not establish a clear factual alibi issue." *Rogers v. State, supra,* 343 A.2d at 610.

It is essential, then, to distinguish between undesirable trial error and that sort of egregious error which amounts to a denial of constitutional due process, for "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly v. DeChristofura,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed. 431 (1974).

In analyzing petitioner's claim, this Court is also mindful of the rule that a jury charge must be viewed as a whole and that no single instruction shall be considered in artificial isolation. *United States ex rel. Harding v. Marks,* 541 F.2d 402, 405 (3d Cir. 1976); *Hallowell v. Keve,* 555 F.2d 103 (3d Cir. 1977). The impact of the judge's erroneous instruction on the jury must be evaluated within the context of the entire trial in determining whether it was so prejudicial as to reach a constitutional denial of due process warranting issuance of a writ of habeas corpus.

## IV. WAS THERE A VIOLATION OF DUE PROCESS?

■ The trial court instructed the jury, in part, as follows:

Now, it is the Defendant's burden to prove to your satisfaction the defense of alibi and the law reads that affirmative defense of alibi is established by a preponderance of the evidence when the jury is persuaded that the evidence makes it more likely than not that each element of the affirmative defense existed at the required time. Therefore, if you are convinced by a preponderance of the evidence that the Defendant, Will E. Rogers, was not present at the scene of the offense at the time they allegedly were committed, then you must return a verdict of not guilty.

Thus, the trial court's charge did not merely contain an attenuated or delitescent innuendo or implication, suggesting to the jury that the defendant had the burden of proving his alibi defense. Rather, it directly and in unmistakable terms obligated the defendant to prove his alibi by a preponderance of the evidence. If this instruction stood alone as the trial court's only counsel regarding the burden of proof on the issue of the defendant's presence at the scene of the crime, the charge would clearly violate due process. In every criminal case the Fourteenth Amendment imposes on the State the burden of proving all essential elements of the offenses charged beyond a reasonable doubt. *See Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 4 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The Court has stated this principle succinctly in *Winship, supra,* 397 U.S. at 364, 90 S.Ct. at 1073:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

Accordingly, while a State may place upon the defendant the burden of proving facts supporting an affirmative defense in justification of the crime, "a State could not classify an alibi as an affirmative defense and place the burden of proof on the defendant because an alibi is really another way of denying guilt of the crime." *United States ex rel. Crosby v. Delaware,* 346 F.Supp. 213, 216 (D.Del.1972).[3]

In short, given the crimes with which petitioner was charged, his presence at the scene of the crime was an essential element of the State's case and an instruction allocating the burden of persuasion on this issue to him would be fundamentally inconsistent with the rationale of *In re Winship.*

3. As the court stated, "For a set of operative facts to be properly classified as an affirmative defense, they must operate as an excuse or justification for the accused, who in effect admits his guilt, but, pleads nonenforceability on other grounds." *United States ex rel. Crosby v. Delaware, supra,* at 216.

See, e. g., Trimble v. Stynchcombe, 481 F.2d 1175 (5th Cir. 1973); United States v. Alston, 551 F.2d 315 (D.C. Cir. 1970); Stump v. Bennett, 398 F.2d 111 (8th Cir. 1960) (en banc), cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1969); Thornton v. Stynchcombe, 323 F.Supp. 254 (N.D.Ga. 1971). If there was a reasonable doubt as to whether the petitioner was present at the time and place the alleged offenses were committed, the jury had to find the petitioner not guilty. It is the burden of the State to prove beyond a reasonable doubt that the alibi offered is not true. United States v. Booz, 451 F.2d 719 (3d Cir. 1971), cert. denied, 414 U.S. 820, 94 S.Ct. 45, 38 L.Ed.2d 52 (1973).[4]

The more debatable question is whether due process is violated by a charge that contains both the above quoted language and legally correct instructions placing the burden of persuasion on the government to prove the defendant's presence beyond a reasonable doubt. While the Third Circuit Court of Appeals has never ruled on the issue in the context of a habeas corpus proceeding, it has reversed convictions in several direct appeals where federal district courts had given similar, though somewhat less objectionable, charges. United States v. Beedle, 463 F.2d 721 (3d Cir. 1972); United States v. Booz, supra; United States v. Barrasso, 267 F.2d 908 (3d Cir. 1959); see also United States v. Marcus, 166 F.2d 497, 503–4 (3d Cir. 1948).

These, and similar cases from other circuits, hold that general instructions which correctly place the burden of persuasion on the government are not a sufficient antidote for language suggesting that the defendant shoulders some burden of establishing his alibi. These cases recognize the impact which such language can have on a case not only because the instruction pertains to what is ordinarily the most crucial question, whether the defendant was the one, but also because of the practical effects of juror confusion in this area. The Third Circuit articulated its concern about these practical effects in the Booz case:

> The insufficiency of the charge of the trial court is not cured by the more general language in the charge that the burden of proof never shifts from the government. This very contention was explicitly rejected in Barrasso. . . .
> A defendant is entitled to specific instructions on the burden of proof on alibi issues because the jury is likely to become confused about the burden of proof when an appellant offers this type of evidence. When affirmative proof, best known by the defendant himself, is offered, a likelihood exists that jurors would look to that proof for persuasion of its truth. But the correct approach is that such proof need only raise a reasonable doubt in the jurors' minds, as to whether defendant was present at the scene.

United States v. Booz, supra, at 723–24.

Judge Mansfield also recently spoke about the danger inherent in such confusion in Wright v. Smith, 569 F.2d 1188, 1191 (2d Cir. 1978), noting that the jurors, as a practical matter, are likely to focus on whether they believe the defendant's alibi evidence

4. An instruction shifting the burden of proof on an alibi issue also violates the defendant's corollary right to a presumption of innocence:

" 'By shifting the burden of proof to a person who claims to have been elsewhere at the time of the crime, there is created an irrational and arbitrary presumption of guilt. It arises not by reason of a proof of fact from which a fair inference might be drawn but from the mere happening that the defendant offers testimony in an attempt to establish innocence. When this occurs, unless the defendant can succeed in overbalancing the state's evidence, the jury is expressly told he cannot be acquitted by reason of his sole claim to innocence. There is thus a prejudgment of a conclusion which the jury should reach of its own volition. * * * [T]his presumption would conflict with the over-riding presumption of innocence with which the law endows the accused and which extends to every element of the crime.' "

United States v. Beedle, 463 F.2d 721, 724 (3d Cir. 1972), quoting Stump v. Bennett, 398 F.2d 111, 116 (8th Cir. 1968), cert. denied, 393 U.S. 18, 89 S.Ct. 483, 21 L.Ed.2d 466 (1969). Although the Third Circuit did not reach the constitutional issue in Beedle, subsequent decisions of the Supreme Court have held that the presumption of innocence is a constitutionally protected right. See Cool v. United States, 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335; Cupp v. Naughten, supra, 414 U.S. at 149–50, 94 S.Ct. 396.

rather than on whether the government's evidence establishes the defendant's presence at the scene of the crime beyond a reasonable doubt:

The introduction of an alibi defense frequently poses the risk that if the alibi evidence is disbelieved,the defense will backfire, leading the jury to convict because of the failure of the defense rather than because the evidence introduced by the government has satisfied the jury of the defendant's guilt beyond a reasonable doubt. Because of this possibility of confusion on the jury's part, we have, on appeal from federal convictions, held that it is reversible error to refuse a defendant's request to the effect that, even if the alibi witnesses are disbelieved, the burden of proof remains with the government. . . .

\*   \*   \*   \*   \*   \*

Other circuits have likewise reversed federal convictions on the ground that the alibi instruction given by the district court inadequately explained the government's burden of proof. See, e. g., *United States v. Booz,* 451 F.2d 719 (3d Cir. 1971). The safeguard against jury confusion is a careful jury instruction designed to emphasize the fact that the assertion of an alibi does not affect the government's burden of proving guilt beyond a reasonable doubt.

The concerns expressed in the *Wright* and *Booz* cases persuade me that the charge given in petitioner's case was not only erroneous and undesirable, but was so fraught with potential for serious and pervasive prejudice as to violate due process. Such a charge is not consistent with " 'that fairness essential to the very concept of justice.' " *Donnelly v. DeChristofura, supra,* 416 U.S. at 642, 94 S.Ct. at 1871.

## V. WAS THE ERROR HARMLESS BEYOND REASONABLE DOUBT?

■ The remaining question is whether the constitutional error which crept into the charge in the petitioner's case was harmless beyond a reasonable doubt. *See, Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied,* 386 U.S. 987 (1967). The Supreme Court of Delaware concluded that the error was harmless. This Court is required to make an independent judgment on this issue, however. With deference, I am constrained to hold that the harmless error doctrine cannot properly be applied to this case.

■ One approach to determining whether a constitutional error has been harmless, is to analyze the error in the context of the particular case in order to determine whether there is a reasonable possibility that it could have contributed to the conviction. *Chapman v. California, supra; Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U.Pa.L.Rev. 15 (1976). I believe the observations which I have earlier made about the requirements of due process are equally applicable in pursuing this analysis. The possibility that petitioner's jury became confused and misdirected by the charge is a substantial one and the rationale of the *Wright* and *Booz* cases, as well as similar cases from other circuits,[5] seems to me inconsistent with a finding that the erroneous charge could have played no role in the conviction.

The other approach to the harmless error rule, and the one adopted by the Supreme Court of Delaware, is to look to all of the evidence properly admitted at trial and ask whether it is so overwhelmingly persuasive of guilt that one is assured that the result would have been the same whether or not the error had occurred. *E. g., Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Field,

---

5. The Eighth Circuit has concluded that "[i]f inconsistent meanings are conveyed by the instruction, whereby a jury could derive an erroneous understanding of the burden, it is difficult to reason that a reasonable doubt does not exist as to the prejudice involved." *Stump v. Bennett, supra,* at 122.

*supra.* As the Supreme Court of Delaware pointed out, the government's evidence, particularly the eye witnesses' identifications of petitioner from non-suggestive spreads shortly after the crime, was quite strong. In contrast, defendant's alibi evidence came solely from himself and witnesses related to him, and no testimony, except that of the defendant, placed him at his sister-in-law's house at the precise time of the crime.

Nevertheless, the defendant swore that he was at his sister-in-law's at the time of the crime and his other witnesses gave sworn testimony which tended to support his account. The evidence thus presented a crucial issue of credibility for the jury to resolve. To sustain petitioner's conviction on harmless error grounds would require a conclusion that, despite this alibi evidence, it would not be possible for a juror to entertain a reasonable doubt about defendant's presence at the scene of the crime. I cannot so conclude.

The facts of this case are not far removed from those before the Court in *United States v. Alston,* 179 U.S.App.D.C. 129, 551 F.2d 315 (1976).[6] I find that court's reasoning persuasive:

> Against the potential of these instructions for confusion, we examine the strength of the evidence of guilt. As noted above, the Government's case rested solely on the victim's identification testimony. Appellant relied on an alibi. Credibility was therefore crucial; the case went to the jury essentially as the victims' word against appellant's. Under such circumstances, we cannot say, beyond a reasonable doubt, that the jury was not swayed by the combined effect of the instructions suggesting that appel-

lant might have assumed the burden of proof by volunteering an alibi. (Footnotes omitted).

179 U.S.App.D.C. at 134, 551 F.2d at 320.

There is inadequate assurance, I conclude, that petitioner's jury understood the State's burden of proof and resolved the issue of his whereabouts at the time of the crime in a manner consistent with due process. After reading the entire record of the State court proceedings, I further conclude that a resolution of that credibility issue by this Court or the Supreme Court of Delaware is an unacceptable substitute for a decision by a properly instructed jury of the petitioner's peers.

An Order will be entered directing that petitioner be released from custody unless the State elects to retry petitioner within a reasonable time to be specified in the Order.

---

**6.** This case is far different from the typical cases in which the Supreme Court has held constitutional error to be harmless. *See, e.g., Harrington v. California, supra; Schneble v. Florida, supra; Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1972). In these three cases, the trial court had erroneously admitted incriminating confessions of non-testifying codefendants, in violation of the defendant's right to confrontation under *Bruton v. United States,* 391 U.S. 723, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1963). However, in each case

there was also an admissible confession or admission of the same facts by the defendant. In addition, in *Harrington,* there was an admissible confession of a testifying codefendant. In light of the overwhelming admissible evidence of guilt, the *Bruton* errors were held to be harmless.

In *Milton v. Wainright, supra,* the Supreme Court held the use of an inadmissible confession to be harmless, where there were also three unchallenged confessions introduced.